**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DORI DUGAS-FILIPPI and ROBERT FILIPPI**, | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 10 C 2023** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **JP MORGAN CHASE, N.A.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dori Dugas-Filippi ("Dugas-Filippi") filed suit against Defendant JP Morgan Chase, N.A. ("Chase"), her former employer, for various alleged wrongs stemming from her termination. Chase has moved for summary judgment on Dugas-Filippi's claims of breach of contract, promissory estoppel, fraud, and conversion. In turn, Dugas-Filippi has brought a cross-motion for summary judgment on her conversion claim. For the reasons provided herein, the Court denies Chase's motion as to Dugas-Filippi's breach of contract and promissory estoppel claims, grants Chase's motion as to Dugas-Filippi's fraud claim, and denies both parties' motions as to Dugas-Filippi's conversion claim.[1]

## Factual Background

The following facts are undisputed, except where otherwise noted. Dugas-Filippi is a

---

[1] The Court also dismisses Robert Filippi as a party to this suit because he lacks standing to bring any of the stated claims against Chase, and the parties have stipulated to his dismissal. *See* Pls.' Resp. Def.'s Mot. Summ. J. 2.

former employee of Chase, where she began working as an administrative specialist on or about October 29, 2001. Def.'s Rule 56.1 Stmt. Material Facts ("Def.'s LR 56.1(a)(3)") ¶¶ 2, 5. On or about March 16, 2006, Dugas-Filippi was promoted to Senior Executive Assistant and began reporting to Chris Deveny ("Deveny"), Managing Director of Investments for the Private Bank and head of the Midwest Private Bank in Chicago. *Id.* ¶¶ 6, 8. Deveny considered Dugas-Filippi an excellent employee and they shared a good working relationship. *Id.* ¶ 9.

In January 2007, Deveny and Dugas-Filippi had two conversations central to this dispute. *Id.* ¶ 29. In the first conversation, Dugas-Filippi requested a paid leave to take care of her ailing husband. *Id.* ¶ 30. Deveny responded that he would "think about it or look into it or something and let [her] know." *Id.* ¶ 31. Because Dugas-Filippi was an excellent employee, Deveny wanted to accommodate her request for scheduling flexibility. Pls.' Rule 56.1 Stmt. Material Facts ("Pls.' LR 56.1(b)(3)") ¶ 3.

The parties dispute what transpired at the second meeting. Dugas-Filippi does not recall the "exact words" or "exact conversation" that took place at the meeting. Def.'s LR 56.1(a)(3) ¶ 32. She remembers, however, that Deveny told her (1) she could take a six-month, paid leave, (2) she would have a job when she returned, but possibly a different job, and (3) she would not be fired for taking the paid leave. Pls.' LR 56.1(b)(3) ¶ 5.[2] Deveny, on the other hand, denies

---

[2]     Here, and in response to many of Dugas-Filippi's factual statements contained in her LR 56.1(b)(3) statement, Chase denies the assertion on the basis that "[p]laintiffs misstate the record in part because the cited testimony contains no evidence in support of" all or part of the allegation, after which Chase then admits to the truth of all or part of the allegation. *See, e.g.*, Def.'s Resp. Pls.' LR 56.1(b)(3) ¶ 5. Chase also devotes the first four pages of its reply brief to pointing out perceived procedural and factual errors in Dugas-Filippi's response brief and LR 56.1(b)(3) statement. *See* Def.'s Reply Supp. Mot. Summ. J. 1-4. The Court has considered Chase's objections, and in determining the undisputed material facts of this case, the Court relies only on the admissible portions of the parties' statements of facts. To the extent deficiencies exist in Dugas-Filippi's factual assertions, the Court disregards those assertions.

promising Dugas-Filippi paid leave, or that she would not be fired for taking paid leave. According to Deveny, he approved only unpaid leave and promised only that Dugas-Filippi would have a job when she returned.    Def.'s LR 56.1(a)(3) ¶ 32.

The parties also dispute whether Deveny was authorized to grant Dugas-Filippi paid leave.    Chase contends that its written policy addressing discretionary leave—available to employees on Chase's intranet—unambiguously denies the availability of paid discretionary leave.    *Id.* ¶¶ 20, 23.    Chase also notes that Dugas-Filippi received no documentation from Deveny acknowledging approval of her request for paid leave.    *Id.* ¶ 34.    Dugas-Filippi, on the other hand, argues that she trusted Deveny, given his position of authority as her manager, and believed he could grant paid leave in an effort to accommodate her request for scheduling flexibility.    *See* Pls.' LR 56.1(b)(3) ¶¶ 2-3, 5.[3]    She also states that in other instances, employees have received paid discretionary leave from Chase.    *Id.* ¶ 11.[4]

Dugas-Filippi took her discretionary leave from Chase starting on February 5, 2007, continuing to August 5, 2007, and received compensation from Chase during that period.

---

[3]    Chase objects to Dugas-Filippi's assertion that Deveny had authority to deviate from the terms of Chase's discretionary leave policy on the basis that the assertion reaches improper conclusions from the testimony it cites.    The Court agrees that the cited testimony does not support the conclusion that Deveny could unilaterally change any aspect of Chase's discretionary leave policy.    However, Dugas-Filippi's claim that, because Deveny was her supervisor, she relied on his alleged promise of paid leave notwithstanding the policy has sufficient support in the record.

[4]    Chase objects to this observation, arguing that the cited testimony lacks foundation, is immaterial, and constitutes hearsay.    The Court disagrees.    Plaintiff cites to a human resources official's firsthand account of how Chase handled other employees' claims of paid leave and does not lack foundation. Additionally, the fact is material to whether Chase could have foreseen that Dugas-Filippi would rely on a promise that she would not be terminated for taking paid leave. Finally, Plaintiff cites to deposition testimony, which is otherwise admissible.    *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (noting that while "hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial[,] . . . except that affidavits and depositions . . . are admissible in summary judgment proceedings to establish the truth of what is attested or deposed") (internal citations omitted).

Def.'s LR 56.1(a)(3) ¶¶ 36-37. The parties dispute why Dugas-Filippi was paid during her leave. Chase asserts that "[e]ither someone at Chase did not process Dugas-Filippi's leave at all, or processed it incorrectly." *Id.* ¶ 37. Conversely, Dugas-Filippi maintains that Deveny promised her paid leave, and so Chase paid her during her leave. Pls.' Resp. Def.'s LR 56.1(a)(3) ¶ 37. The parties agree, however, that upon Dugas-Filippi's return to Chase, she was placed in a new position, Trust Assistant, and reported to a different supervisor. Def.'s LR 56.1(a)(3) ¶ 38. Dugas-Filippi viewed this new position as a "step down" from her previous position as a Senior Executive Assistant. Pls.' LR 56.1(b)(3) ¶ 23. Chase denies that the Trust Assistant position was a "step down." Def.'s Resp. Pls.' LR 56.1(b)(3) ¶ 23.

Chase subsequently discovered that it had not properly processed Dugas-Filippi's leave of absence. Def.'s LR 56.1(b)(3) ¶ 40. Chase then retroactively designated the leave as unpaid and requested that Dugas-Filippi repay the compensation she had received. *Id.* ¶¶ 40-41. She refused. *Id.* ¶ 42. From Dugas-Filippi's return in 2007 to her termination in 2009, Chase made numerous attempts to collect the compensation it paid her during her leave, but was refused. Pls.' LR 56.1(b)(3) ¶ 36.[5] During this period, Chase also paid Dugas-Filippi two bonuses, the first in 2008 for $7,000.00, and the second in 2009 for $8,000.00. *Id.* ¶¶ 25, 31.[6] According to one of Chase's human resources officers, Deveny arranged the bonuses in order to alleviate the financial pressure that Chase's repayment demand had placed on Dugas-Filippi.

---

[5]     Chase's objections to this factual assertion is misplaced. The fact that Chase requested Dugas-Filippi to return the pay she received during her leave is central to this dispute. Additionally, the human resources official providing the cited testimony had the requisite knowledge to support the assertion.

[6]     Chase objects to these facts on the basis that they are immaterial. These facts are material, however, to Dugas-Filippi's fraud claim. *See* Pls.' Resp. Def.'s Mot. Summ. J. 13.

*Id.* ¶¶ 27-28.[7]   Notwithstanding, Dugas-Filippi refused to repay the compensation she received during her leave.   Def.'s LR 56.1(a)(3) ¶ 47.   Chase terminated Dugas-Filippi on October 29, 2009, for "refusing to repay funds that Chase believed should have been repaid."   *Id.* ¶ 48.[8]

As an additional matter, Chase used part of the compensation paid to Dugas-Filippi during her leave to purchase 143.6199 shares of Chase common stock as part of Chase's Employee Stock Purchase Plan ("ESPP").   Def.'s LR 56.1(b)(3) ¶¶ 51-52.   Under the plan, eligible employees were allowed to purchase discounted Chase shares with their compensation. *Id.* ¶ 51.   Employees would then sell or trade those shares, but were required to request a certificate describing the shares, which required some delay for administrative processing.   Pls.' Rule 56.1 Stmt. Facts Cross-Mot. Summ. J. ¶ 7.[9]   When Chase discovered Dugas-Filippi's leave had not been processed properly, Chase advised her that it would "pull back" the shares, and did so.   *Id.* ¶¶ 52, 54.[10]

---

[7]    Chase argues that this statement relies on inadmissible hearsay.   Plaintiff, however, cites to deposition testimony, and the statement is therefore admissible.   *See Eisenstadt*, 113 F.3d at 742 (7th Cir. 1997).

[8]    Chase insists that it did not terminate Dugas-Filippi for taking paid leave, but for "failing to repay money that Chase believed should have been repaid."   Def.'s Mem. Supp. Mot. Summ. J. 8.   As Plaintiffs correctly argue, this is a distinction without a difference.   Pls.' Resp. Def.'s Mot. Summ. J. 7. Firing an employee for refusing to pay back money earned during a paid leave is for all relevant purposes equivalent to firing the employee for taking the paid leave where the employee had permission to do so.

[9]    Chase objects to these assertions on the basis that they constitute speculation and lack foundational support.   In support of these facts, however, Dugas-Filippi relies primarily on Chase's ESPP manual. The manual, which Chase distributed for the purpose of explaining employee rights and privileges under the ESPP, is neither speculative nor without foundation.   In fact, Chase refers to the manual in supporting many of its own assertions.   *See, e.g.*, Def.'s LR 56.1(a)(3) ¶¶ 51, 57-58.

[10]    Dugas-Filippi argues that Chase did not "cancel" the shares of stock, but merely refused to issue a certificate for the 143.6199 shares issued during Dugas-Filippi's leave.   Pls.' Rule 56.1 Resp. Def.'s Stmt. Facts ¶ 54.   Conversely, Chase denies that it "interfered with the issuance of [a] stock certificate" including the shares at issue, and denies that a certificate was issued less 143.6199 shares.   Def.'s Resp. Pls.' Rule 56.1 Stmt. Facts Cross-Mot. Summ. J. ¶¶ 15-16.   Because Dugas-Filippi could bring a conversion claim regardless of the dispute, the Court does not find this issue material.

The parties dispute whether Dugas-Filippi was qualified to participate in the ESPP while on leave, and how and if Dugas-Filippi controlled the 143.6199 shares. Dugas-Filippi asserts that she was eligible to participate in the ESPP, and as a qualified shareholder, could request a stock certificate and sell or trade all or some of her shares at any time. *Id.* ¶ 7; Pls.' Resp. Def.'s LR 56.1(a)(3) ¶ 52. Chase, however, denies that Dugas-Filippi was eligible to participate in the ESPP because she was not "regularly scheduled to work [twenty] or more hours per week" as required by Chase's ESPP policy. *See* Def.'s LR 56.1(a)(3) ¶ 57. Accordingly, in Chase's view, Dugas-Filippi cannot sell or trade the shares which it believes were mistakenly issued. Def.'s Resp. Pls.' Rule 56.1 Stmt. Facts Cross-Mot. Summ. J. ¶¶ 7, 12.

## Legal Standard

Summary judgment is proper for cases in which "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(a). For cases in which the parties enter cross-motions for summary judgment, as here for Dugas-Filippi's conversion claim, both parties must satisfy the requirements of Rule 56(a). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" a genuine issue of material fact exists for trial, rendering summary judgment improper. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the non-movant must set forth specific facts supported by admissible evidence that establish a genuine issue for trial. *Id.* at 324.

## Analysis

### I. Breach of Contract Claim

Dugas-Filippi alleges that, pursuant to her conversations with Deveny, she entered into an oral contract with Chase under which Chase agreed not to terminate her for taking paid leave.[11] Chase contends that Dugas-Filippi's contract claim must fail because: (1) Dugas-Filippi cannot show Deveny made a clear and definite promise that Dugas-Filippi would not be terminated for taking paid leave; (2) even if Deveny made such a promise, Dugas-Filippi could not have reasonably relied on it; (3) Dugas-Filippi offered no consideration for Deveny's purported promise; and (4) even if Dugas-Filippi reasonably relied on a clear and definite promise supported by consideration, the Statute of Frauds renders the alleged oral contract unenforceable.

#### A. Offer and Acceptance

Chase first argues that Dugas-Filippi's alleged contract with Deveny was not formed through a valid offer and acceptance. Under Illinois law, oral employment contracts must satisfy the traditional requirements of contract formation. *See McInerney v. Charter Golf, Inc.*, 680 N.E.2d 1347, 1349 (Ill. 1997) (citing *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987)). Contracts must consist of an offer made in clear and definite terms and an acceptance of that offer. *See id.* An offer's terms are clear and definite "as long as 'an employee would reasonably believe that an offer has been made.'" *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 363 (7th Cir. 2005) (quoting *Duldulao*, 505 N.E.2d at 318).

---

[11] The First Amended Complaint contains some allegations to suggest that Chase modified Dugas-Filippi's status as an at-will employee. *See, e.g.*, First Am. Compl. ¶¶ 3-4. In Dugas-Filippi's response brief, she appears to concede that her at-will status never changed, but instead argues that she entered into a contract that, while not displacing her at-will status, prohibited Chase from firing her for taking the paid leave she requested. Pls.' Resp. Def.'s Mot. Summ. J. 2-3.

Illinois courts have struggled to consistently determine when an offer is sufficiently clear and definite to support contract formation. As a general matter, Illinois courts construe oral employment contracts, as opposed to written contracts, with greater scrutiny. *Kiddy-Brown*, 408 F.3d at 363 (internal citations omitted). This scrutiny is highest in instances involving contracts for lifetime or permanent employment, or contracts that rebut the presumption of at-will employment. *See id.*; *see also Chism v. Kenall Mfg. Co.*, No. 06 C 3374, 2008 WL 506115, at **16-17 (N.D. Ill. Feb. 15, 2008). This scrutiny is less pronounced, however, in instances that involve the assertion of contractual rights that fall short of permanent employment. In those cases, courts have been more willing to find that oral employment contracts exist. *See, e.g.*, *Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1359 (Ill. App. Ct. 1993) (finding oral employment contract for set duration clear and definite). Here, Dugas-Filippi's alleged contract does not ensure permanent employment, but merely excludes a single reason for which she could be terminated.

While acknowledging that "Illinois case law on this issue is certainly not a seamless garment," *Taylor v. Canteen Corp.*, 69 F.3d 773, 783 (7th Cir. 1995), the Court holds that a reasonable jury could conclude that Deveny's promise consisted of clear and definite terms that Dugas-Filippi could have reasonably believed constituted a contractual offer. The terms of the contract—that Chase would not terminate Dugas-Filippi for taking a paid six-month leave—are sufficiently clear and definite for the Court to enforce. Pls.' LR 56.1(b)(3) ¶ 5. Additionally, because Dugas-Filippi relied on Deveny's position of authority and their past working relationship in accepting his offer, the Court finds that Dugas-Filippi's belief was not unreasonable. *Id.* ¶¶ 3, 5. To the extent that Chase's discretionary leave policy is at odds with

Dugas-Filippi's understanding, this is a matter of dispute that cannot be resolved on summary judgment.

In its submission, Chase argues that, because Dugas-Filippi cannot remember the "exact words" or "exact conversation" in which Deveny made this promise to her, the promise was not clear and definite, relying on *Koch v. Illinois Power Co.*, 529 N.E.2d 281, 284 (Ill. App. Ct. 1988), and *Birks v. First Evergreen Corp.*, No. 92 C 6589, 1994 WL 36884, at *5 (N.D. Ill. Feb. 8, 1994). Chase, however, misunderstands *Koch* and *Birks*, which do not stand for the proposition that a plaintiff must remember the exact words or conversations, but only that a plaintiff must show sufficiently clear and definite terms capable of enforcement. Thus, while the court in *Koch* noted that the plaintiff could not remember the exact language of purported oral agreement, the court based its finding of lack of clarity and indefiniteness largely on the fact that "the court would have to restructure [the agreement] with new, more definite terms for an enforceable agreement to exist." 529 N.E.2d at 284. No such restructuring is needed in this case. Similarly, in *Birks,* the court found an alleged contractual promise "did not contain the specificity that ordinarily is present in a discussion of contract terms[,]" and "also" relied on plaintiff's inability to cite exact language. 1994 WL 35884, at *5. Dugas-Filippi's purported agreement with Deveny satisfies the requirement of specificity.

Chase also maintains that, because Deveny did not have authority under the discretionary leave policy to grant paid leave, Dugas-Filippi could not have reasonably believed his offer was contractually enforceable. Although Chase cites cases in which provisions of employee handbooks have precluded rebuttal of the presumption of at-will employment, *see, e.g.*, *Sinio v. McDonald's Corp.*, No. 04 C 4161, 2005 WL 1311131, at *5 (N.D. Ill. May 16, 2005), it

provides no case law that suggests the Court must find Chase's discretionary leave policy dispositive of the issues here. The record does not establish that Chase's discretionary leave policy was exhaustive of all leave options available to employees, nor does the record indicate the scope of the policy or its effective date. *See* Def.'s LR 56.1(a)(3) ¶¶ 20, 21.

Additionally, Chase does not explain why it would be unreasonable for Dugas-Filippi to believe Deveny was making an exception to the policy in this instance. "[A]n employer distributing a policy statement . . . does not make a contract, but rather makes a continuing offer to employees . . . . As with any offer, the employer may rescind or modify its offer . . . ." *Hany v. Gen. Elec. Co.*, 581 N.E.2d 1213, 1216-17 (Ill. App. Ct. 1991). Chase attempts to characterize this case as one in which Dugas-Filippi "harbored a belief" in Deveny's offer in the face of "an avalanche of contrary information." *Colella v. Marriott Int'l, Inc.*, No. 95 C 3005, 1995 WL 562131, at *6 (N.D. Ill. Sept. 20, 1995). But Chase's discretionary leave policy is hardly an "avalanche," particularly given Dugas-Filippi's good faith belief in her supervisor's alleged promise. Accordingly, the Court holds that a reasonable jury could conclude that Deveny made Dugas-Filippi a clear and definite offer, upon which she reasonably relied and accepted.

### B. Consideration

Second, Chase argues that Dugas-Filippi's alleged contract with Deveny was not supported by adequate consideration. Illinois courts define consideration as the "bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance." *McInerney*, 680 N.E.2d at 1350 (quoting the Restatement (Second) of Contracts § 71). Specifically, contracts for indefinite employment require additional consideration beyond an

employee merely continuing to work for the employer. *See Smith v. Bd. of Educ.*, 708 F.2d 258, 263 (7th Cir. 1983). An employee must make some sacrifice he or she would not have made otherwise. *Id.* However, where an oral employment contract does not promise employment for life, some courts have not required additional consideration beyond the employee's agreement to continue working for the employer. *Johnson*, 617 N.E.2d at 1359-60 (collecting cases).

In this case, the Court finds that, regardless of the nature of the alleged contract, a genuine dispute of material fact exists as to whether Dugas-Filippi supplied adequate consideration. By promising to return to Chase after her leave in a different role, including a role she considered a "step down" from her previous role, Dugas-Filippi made a sacrifice she would not have made otherwise beyond continuing to work at Chase. Pls.' LR 56.1(b)(3) ¶ 23; *see Kamboj v. Eli Lilly & Co.*, No. 05 C 4023, 2007 WL 178434, at *8 (N.D. Ill. Jan. 18, 2007) (denying employer's motion for summary judgment on employee's breach of contract claim because reasonable jury could conclude employee's moving cities at employer's request was sufficient consideration for employer's promise of higher pay and other benefits). Without the prospect of paid leave, Dugas-Filippi might have preferred to stay in her current position instead of agreeing to accept an inferior post upon her return to Chase. Accordingly, the Court holds that a reasonable jury could find that Dugas-Filippi supplied consideration for Deveny's alleged promise.[12]

---

[12] Chase claims that Dugas-Filippi provides no evidence that she "agreed" to anything or had any "obligation" to continue working in another role. Dugas-Filippi's testimony concerning her conversations with Deveny, however, plainly undercuts this argument. See Pls.' LR 56.1(b)(3) ¶ 23. Additionally, Chase disputes whether Dugas-Filippi's Trust Assistant position was a "step-down." Chase's understanding, even if true, seems to attack the adequacy, rather than the existence, of consideration, which misunderstands the requirement, and constitutes a question of fact for the jury. *See Wagner v. NutraSweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996) (internal citations omitted) ("As long as the person

## C. Statute of Frauds

Finally, Chase argues that the Statute of Frauds applies to Dugas-Filippi's alleged agreement with Deveny, rendering the alleged contract unenforceable. In Illinois, the Statute of Frauds requires a signed writing for any contract incapable of being fully performed within one year. 740 Ill. Comp. Stat. 80/1; *McInerney*, 680 N.E.2d at 1351. Additionally, Illinois courts have held that the Statute of Frauds applies to contracts for lifetime employment, because such contracts "anticipate[] a relationship of long duration[—]certainly longer than one year." *Id.* at 1351-52. The Statute of Frauds does not, however, apply to all contracts of indefinite duration, nor are all employment contracts without specific duration lifetime contracts. *Czapla v. Commerz Futures, LLC*, 114 F. Supp. 2d 715, 719 (N.D. Ill. 2000).

Here, the Court holds that a reasonable jury could find that Dugas-Filippi's purported contract with Chase is not subject to the Statute of Frauds because it is not a contract for indefinite or lifetime employment.[13] As Dugas-Filippi correctly observes, under the alleged contract, Chase could terminate Dugas-Filippi for any reason at any time, except for taking six months' paid leave.

Additionally, at its inception, the contract did not anticipate a relationship of duration beyond one year. *See McInerney* 680 N.E.2d at 1352. While Dugas-Filippi may seek to enforce the contract with Chase more than one year after the contract's formation, the primary

---

receives something of value in exchange for her own promise or detriment, [Illinois] courts will not inquire into the adequacy of the consideration.").

[13]     Chase argues that *Smith v. Rush Presbyterian-St. Lukes Medical Center*, No. 01 C 4971, 2001 WL 1035239, at *4 (N.D. Ill. Sept. 10, 2001), suggests otherwise. The alleged oral contract in *Smith*, however, was for an indefinite period ("until retirement") and only permitted termination for cause. *Id.* Thus, the *Smith* contract is different from that alleged in the present case, in which Chase could terminate Dugas-Filippi for any reason at any time, other than for taking the paid leave at issue.

focus of Dugas-Filippi's arrangement with Deveny was that she should be able to return to Chase after six months' paid leave. The fact that Dugas-Filippi seeks to enforce the contract outside the one-year period does not render the contract unenforceable. *See Czapla*, 114 F. Supp. 2d at 717, 720 (holding plaintiff's breach of contract claim concerning oral employment contract for unspecified duration not barred by Statute of Frauds, notwithstanding expiration of the one-year period following formation). Thus, Chase has failed to meet its burden of establishing that the Statute of Frauds renders Dugas-Filippi's alleged contract unenforceable.

For these reasons, the Court denies Chase's motion for summary judgment on Dugas-Filippi's breach of contract claim.[14]

## II. Promissory Estoppel

As an alternative to her breach of contract claim, Dugas-Filippi seeks to enforce her oral agreement with Deveny by virtue of the doctrine of promissory estoppel. To invoke promissory estoppel, a plaintiff must prove that: (1) the defendant made an unambiguous promise to the plaintiff; (2) the plaintiff reasonably and justifiably relied on the promise; (3) the plaintiff's reliance was expected and foreseeable by the defendant; and (4) the plaintiff relied on the promise to her detriment. *Quake Const., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 1004 (Ill. 1990) (internal citations omitted). Chase argues Dugas-Filippi cannot invoke promissory estoppel because (1) Deveny did not make Dugas-Filippi a clear, unambiguous promise; (2) even if Deveny had made such a promise, Dugas-Filippi did not reasonably rely on the promise; and (3) it was not reasonably foreseeable from Chase's perspective that Dugas-Filippi would rely on

---

[14] Chase also claims the contract was not breached, but for the reasons discussed above Chase's argument is unconvincing.

Deveny's promise.[15]   These arguments do not withstand scrutiny.

Just as Deveny's purported offer was clear and definite, a reasonable jury could also find that his statements were sufficiently defined to invoke promissory estoppel.   It does not matter that Dugas-Filippi cannot remember Deveny's exact words or her exact conversation with Deveny, because Deveny's alleged promise not to fire Dugas-Filippi for taking paid leave was unambiguous.   Pls.' LR 56.1(b)(3) ¶ 5; *see, e.g.*, *Lamaster v. Chi. & Ne. Ill. Dist. Council*, 766 F. Supp. 1497, 1498 (N.D. Ill. 1991) (finding employer's promise that employee could "hold [his] position for as long as he chose to do so" sufficiently unambiguous).   Additionally, for the reasons explained above, a reasonable jury could find that Dugas-Filippi was justified in relying upon Deveny's promise because of her working relationship with Deveny and his position of authority over her.   Pls.' LR 56.1(b)(3) ¶¶ 2-3, 5.   In turn, Deveny should have expected or foreseen that Dugas-Filippi would take Deveny at his word, notwithstanding Chase's discretionary leave policy, because Deveny was Dugas-Filippi's longstanding supervisor and was familiar with the family concerns underlying her leave request.   *Id.*; *see Janda v. U.S. Cellular Corp.*, 961 N.E.2d 425, 445 (Ill. App. Ct. 2011) (finding employee's reliance on employer's promises ancillary to employee handbook reasonable and foreseeable from perspective of

---

[15]   Chase also argues that Dugas-Filippi experienced no detriment in relying on Deveny's promise, and that the Statute of Frauds renders the doctrine of promissory estoppel unavailable in this case. Because Dugas-Filippi was terminated, she experienced material detriment.   And because the Statute of Frauds does not bar Dugas-Filippi's contract claim, it also does not bar her attempt to invoke promissory estoppel.

employer).[16]  Finally, because Dugas-Filippi took leave and was eventually terminated for doing

so, she relied to her detriment on Deveny's promise.    Def.'s LR 56.1(a)(3) ¶¶ 47-48.

Chase's only argument against Dugas-Filippi's promissory estoppel claim not duplicative

of arguments already addressed above is that Chase could not have foreseen Dugas-Filippi's

reliance on Deveny's promise.    To the extent Chase endeavors to separate Chase from Deveny,

this is a misleading distinction.    Because Deveny acted as Chase's agent, it was also foreseeable

to Chase that Dugas-Filippi would rely on his promise.    *See, e.g,. Bakke v. Cotter & Co.*, 984 F.

Supp. 1167, 1176 (N.D. Ill. 1997) (finding genuine issue of material fact as to whether plaintiff's

reliance was foreseeable by defendant corporation when promise made by defendant's

employee).

Chase also cites *Ross v. May Co.*, 880 N.E.2d 210 (Ill. App. Ct. 2007), to argue that it

was not foreseeable to Chase that Dugas-Filippi would rely on Deveny's promise.    In *Ross*, the

court affirmed the lower court's dismissal of the plaintiff's promissory estoppel claim because

his reliance on a manager's statements regarding a change in his at-will employment status was

not reasonable when viewed in light of the employee handbook.    880 N.E.2d at 217.

Dugas-Filippi, however, does not allege that Deveny changed her at-will employment status but

contends that Deveny made a separate promise.    *Ross*, therefore, is distinguishable, and for the

reasons explained above, Dugas-Filippi's reliance on Deveny's statement was foreseeable by

---

[16]    Chase argues *Janda* is inapplicable because that case concerned a promise that "did not focus on
an 'employment aspect' that would cause the plaintiff to believe that his at-will status changed."    Def.'s
Reply Supp. Mot. Summ. J. 12-13.    Thus, Chase reasons, *Janda* cannot apply in this instance, where the
purported promise concerned an "employment aspect" that modified Dugas-Filippi's at-will employment
status with Chase.    However, as discussed above, Dugas-Filippi does not argue that her at-will status has
been modified.    Rather, she seeks to enforce an alleged promise that she could not be fired for taking paid
leave.    Thus, not unlike in *Janda*, Dugas-Filippi was reasonable in relying on Deveny's promise, and it
was foreseeable to Chase that she would rely on his promise.

Chase.

For these reasons, the Court denies Chase's motion for summary judgment on Dugas-Filippi's promissory estoppel claim.

### III.  Fraud

Dugas-Filippi also claims that Chase defrauded her through Deveny's promise that she would not be terminated for taking paid leave.  To assert a claim of common law fraud, Dugas-Filippi must show that: (1) Deveny made a false statement of material fact; (2) Deveny knew the statement was false; (3) Deveny intended the statement to induce Dugas-Filippi to act; (4) Dugas-Filippi had a right to and did rely on the statement; and (5) the reliance caused Dugas-Filippi harm.  *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996) (internal citations omitted).  Chase maintains that Dugas-Filippi cannot establish a fraud claim in part because Deveny's alleged promise manifests a future intention, which cannot serve as the basis of a fraud claim.  The Court agrees.

To her credit, Dugas-Filippi acknowledges that Deveny's promise was not a false statement of material fact, but a statement of future intention.  *See* Pls.' Resp. Def.'s Mot. Summ. J. 13-14.  Dugas-Filippi therefore seeks to invoke the "scheme exception," which permits a fraud claim based upon promises or statements of future intention if the promises or statements are part of a larger scheme to defraud.  *Stunfence, Inc. v. Gallagher Sec. (USA), Inc.*, No. 01 C 9627, 2002 WL 1838128, at *4 (N.D. Ill. Aug. 12, 2002) (citing *Stamatakis Indus., Inc. v. King*, 520 N.E.2d 770, 772 (Ill. App. Ct. 1987)).  The scheme exception, often recast as the doctrine of promissory fraud, is limited to instances in which the fraud is "embedded in a larger pattern of deceptions or enticements[,]" *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1354

(7th Cir. 1995), or a "breach that follows so close on the heels of the promise that the intent not to keep the promise may be inferred." *AAR Int'l, Inc. v. Vacances Heliades S.A.*, 202 F. Supp. 2d 788, 798-99 (N.D. Ill. 2002).

Dugas-Filippi asserts that Deveny's promise falls under the scheme exception because it was part of a larger scheme to defraud her. Pls.' Resp. Def.'s Mot. Summ. J. 13-14. Dugas-Filippi identifies the bonuses Chase paid her in 2008 and 2009, which were issued to ease the burden of Chase's repayment demands, as evidence of the scheme. *See* Pls.' LR 56.1(b)(3) ¶¶ 25, 27-28, 31. These assertions, however, are insufficient to demonstrate a fraudulent scheme. First, the bonuses themselves cannot be viewed as indicative of a larger pattern of deceptions or enticements. *See, e.g.*, *Clutch Auto Ltd. v. Navistar, Inc.*, No. 12 C 9564, 2013 WL 1914328, at **1, 4 (N.D. Ill. May 8, 2013) (concluding misrepresentations during "several meetings and exchanges" did not constitute a large pattern of deceptions capable of forming the basis of a promissory fraud claim). Additionally, Chase terminated Dugas-Filippi over two years after her return from leave, hardly "on the heels" of Deveny's promise. *See AAR Int'l, Inc.*, 202 F. Supp. 3d at 798-99. Finally, even if the Court were to assume that the purpose of the bonuses was to relieve Dugas-Filippi's burden of paying back the compensation received during her leave, nothing in the record demonstrates that Deveny knew at the outset that his promise that Dugas-Filippi would not be terminated for taking paid leave was false, or that he

intended to defraud her with the promise.[17]

For these reasons, the Court grants Chase's motion for summary judgment on Dugas-Filippi's fraud claim.

## IV. Conversion

Finally, Dugas-Filippi claims that Chase, by cancelling the 143.6199 shares of Chase common stock purchased in Dugas-Filippi's name, illegally converted those shares. Both parties have moved for summary judgment on this claim. To prove conversion, a plaintiff must establish: (1) a right to the property in question; (2) an absolute and unconditional right to immediate possession of the property; (3) the plaintiff made a demand for possession of the property; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998) (internal citations omitted). Chase argues Dugas-Filippi has not established a right to the shares or an absolute and unconditional right to immediate possession. Chase also argues that it did not wrongfully assume control, dominion, or ownership over the shares. Dugas-Filippi, on the other hand, argues she has provided sufficient evidence to establish her conversion claim.

### A. Right to the Property

The parties first disagree about whether Dugas-Filippi had a right to the shares of Chase common stock. Chase argues that Dugas-Filippi was ineligible to participate in the ESPP while

---

[17]      Similarly, the cases Dugas-Filippi cites in support of her fraud claim are factually distinguishable from the present case. *Steinberg v. Chicago Medical School*, decided well before modern cases discussing the scheme exception, concerned an alleged medical school application fraud which involved a large number of applicants relying on a particular promise, in which the promise and breach of the promise were much closer in time than here. 371 N.E.2d 634, 638, 641 (Ill. 1977). *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, is similarly outdated and addressed "'a scheme of repeated and numerous knowingly false promises and representations'" involving multiple actors. 545 N.E.2d 672, 682-83 (Ill. 1989).

on leave, because she was working fewer than twenty hours per week. Accordingly, Chase maintains that by cancelling the shares, it was merely exercising its right over the shares, which never passed to Dugas-Filippi. For her part, Dugas-Filippi argues that by purchasing the shares through the compensation paid to her during leave, she acquired a right to the shares. Dugas-Filippi further asserts that Chase's ESPP does not deny eligibility to employees on paid leave, and that she remained eligible for the ESPP during her paid leave. Finally, Dugas-Filippi suggests that if Chase thought it had issued Dugas-Filippi's shares wrongfully, it should have sued her for the shares, rather than cancelling the shares unilaterally.

Neither party has presented to the Court, nor has the Court found, any case in which a former employee has brought a conversion claim to recover stocks purchased with the employee's compensation that were subsequently cancelled by the issuer (employer) on the grounds that the stock was wrongfully issued. Dugas-Filippi has cited no helpful legal authority in support of her position. Chase's cited authority is inapposite.[18] In any event, the record reveals material factual disputes that a jury must resolve.

First, the record does not establish whether Dugas-Filippi was eligible to participate in the ESPP while on leave. Dugas-Filippi was not working twenty hours per week during that period; however, the ESPP deems employees who "regularly" work twenty hours eligible, and Dugas-Filippi "regularly" worked twenty hours per week when not on leave. See Def.'s LR 56.1(a)(3) ¶ 51-52; Pls.' Resp. Def.'s LR 56.1(a)(3) ¶ 52.

---

[18] *Paul v. ING Financial Partners, Inc.* involved plaintiffs' claim that defendant converted plaintiffs' money invested in certain insurance policies. No. 3-09-0588, 2010 WL 8544601, at *7 (Ill. App. Ct. Sept. 10, 2010). The court denied plaintiffs' claim because plaintiffs failed to plead facts indicating the defendant exercised unauthorized control over their funds, not because plaintiffs did not have a right to their funds. *Id.* Here, there is a dispute as to whether Dugas-Filippi had a right to the shares, and whether Chase exercised unauthorized control over the shares.

Additionally, the ESPP does not specifically address whether taking paid leave disqualifies an employee from participation in the ESPP. Pls.' Resp. Def.'s 56.1(a)(3) ¶ 52; *see also* App. Supp. Def.'s Mot. Summ. J., Dec. B, Ex. 1, ESPP at 11, 17 ("*Generally*, for U.S. employees, you're eligible to participate [in the ESPP] if you are a full-time or part-time employee *regularly* scheduled to work [twenty] or more hours per week.") ("Several situations *could* cause your payroll contributions to the [ESPP] to end. These situations include . . . [c]hanging to an ineligible work status (for example, becoming *regularly* scheduled to work fewer than [twenty] hours per week.") (emphases added).

Finally, even if Dugas-Filippi were not eligible to participate in the plan, the ESPP does not state how Chase should have proceeded to recoup the stocks. The ESPP does not state Dugas-Filippi had a right to keep the shares, nor does it state that Chase could unilaterally cancel the shares. App. Supp. Def.'s Mot. Summ. J., Decl. B, Ex. 1. Thus, given the current record, there are genuine disputes as to issues of material fact that preclude summary judgment.[19]

### B. Absolute and Unconditional Right to Immediate Possession of the Property

The parties also dispute whether Dugas-Filippi had an absolute and unconditional right to immediate possession of the shares. Resolution of this issue depends on whether Dugas-Filippi had a right to the shares in the first place. But Chase, in addition to disputing Dugas-Filippi's eligibility to participate in the ESPP, also observes that Dugas-Filippi would have needed to request a certificate describing her shares from Chase in order to sell them. Chase argues that the requirement to this request, which would have required administrative processing over the

---

[19]     The Court also notes that the issue of whether Dugas-Filippi had a right to the shares is tied to the resolution of Dugas-Filippi's breach of contract and promissory estoppel claims. Without knowing if Dugas-Filippi had a valid contract or legally enforceable promise under which she took her paid leave of absence, it is difficult to assess the strength of her conversion claim.

course of several days, prevents any right of possession Dugas-Filippi may have had in the shares from being absolute, unconditional, or immediate. Conversely, Dugas-Filippi maintains that, notwithstanding the process of requesting a certificate, she had an absolute and unconditional right to immediate possession of the shares.

Chase's argument, taken to its logical extent, suggests that shares that are not identified in a share certificate cannot be converted. This position is contrary to Illinois law. *See Lewis v. Bidwell Elec. Co.*, 141 Ill. App. 33, 35 (Ill. App. Ct. 1908) (designating "declar[ing] a forfeiture of stock [] wrongfully" as a situation in which a corporation can convert stock not yet merged into a stock certificate); *see also Kerrigan v. Am. Orthodontics Corp.*, 960 F.2d 43, 45 (7th Cir. 1992) ("A corporation accordingly may convert stock by refusing to register a transfer to the owner; refusal to record the change prevents the buyer from having the benefits of ownership."). Thus, insofar as Dugas-Filippi had a right to possession of the shares at issue, Chase's processing procedure would not by itself invalidate Dugas-Filippi's absolute, unconditional, or immediate right to possession. The authorities Chase cites in support of its position, which do not concern shares of stock, do not alter the Court's analysis.[20]

---

[20] First, *Antonelli v. Sherrow*, where the plaintiff could not immediately possess the relevant property because he was incarcerated, bears no similarity to the present case. No. 02 C 8714, 2005 WL 2338813, at *14 (N.D. Ill. Sept. 21, 2005). The same is true in *Chemsource, Inc. v. Hub Group, Inc.*, where the plaintiffs had not paid for the property in question and thus did not have a right to possess it. 106 F.3d 1358, 1363 (7th Cir. 1997). *Lewis v. National City Bank*, where the plaintiff had defaulted on payments for the property in question, removing his absolute and unconditional right in the property, is also factually dissimilar. 814 F. Supp. 696, 699 (N.D. Ill. 1993). Finally, in *Hartford Fire Insurance Co. v. Taylor*, the court denied plaintiff's motion for summary judgment on a conversion claim involving a car, on the basis that genuine disputes as to issues of material fact precluded the court from awarding summary judgment. 903 F. Supp. 2d 623, 653-54 (N.D. Ill. 2012). *Hartford* also provides no support for Chase's position.

### C. Wrongful Assumption of Control, Dominion, or Ownership over the Property

Finally, the parties dispute whether Chase wrongfully assumed control, dominion, or ownership over the shares. The parties' arguments are identical to those concerning whether Dugas-Filippi had a right to the shares in the first place. For the reasons stated above, there are genuine disputes as to material issues of fact that preclude determination of whether Chase wrongfully assumed control over Dugas-Filippi's shares by cancelling them.[21]

For these reasons, the Court denies both parties' cross-motions for summary judgment on Dugas-Filippi's conversion claim.

### CONCLUSION

For the reasons stated above, the Court denies Chase's motion for summary judgment as to Dugas-Filippi's breach of contract and promissory estoppel claims, grants Chase's motion as to Dugas-Filippi's fraud claim, and denies the parties' cross-motions for summary judgment as to Dugas-Filippi's conversion claim.

**SO ORDERED**                          **ENTER:     9/4/14**

                                          **JOHN Z. LEE**
                                          **United States District Judge**

---

[21]    Chase's reliance on *Bank of Joliet v. Firstar Bank Milwaukee*, in which the plaintiff was "entitled" to the property at issue, and thus the court denied defendant's motion for summary judgment on a conversion counterclaim, is also misplaced. No. 96 C 1145, 1997 WL 619875, at *14 (N.D. Ill. Sept. 30, 1997). Chase has not demonstrated to this point that it was entitled to Dugas-Filippi's shares.